UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES ANDREWS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-14665** |
| **W.S. SANDY MCCAIN, WARDEN OF RAYMOND LABORDE CORRECTIONAL CENTER** | **SECTION "E"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.   Factual and Procedural Background

The petitioner, Charles Andrews ("Andrews"), is a convicted inmate incarcerated in the Raymond Laborde Correctional Center in Cottonport, Louisiana.[2] On April 15, 2009, Andrews was charged by Bill of Information in Orleans Parish with the attempted first degree murder of Scott Sosely.[3]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 5, Bill of Information, 4/15/09.

The record reflects that, on January 7, 2009, Sosely purchased a Chevrolet Blazer with insurance proceeds he received from an accident.[4] He also used the money to pay a few bills, and he contacted Andrews to pay off a $60 debt he owed for marijuana that he previously had purchased. Sosely only knew Andrews through other people and did not know his last name, although he had Andrews's cellphone number and had been to Andrews's home in Marrero, Louisiana several times.

That same night, Sosely went to pay Andrews what he owed him for the previously obtained marijuana. While there, Andrews asked Sosely for a ride to the East Bank of New Orleans. Sosely drove Andrews to the East Bank while following another car. At one point, both vehicles stopped. Andrews got out of Sosely's car and briefly got into the other vehicle. When Andrews returned to Sosely's car, he was wearing his "hoodie" over his head, and the other car drove off. As Andrews entered Sosely's car through the passenger side, he told Sosely to give him the rest of his money. Sosely bolted out of the driver's side door and Andrews shot him twice as he fled.

While exiting the car, Sosely was shot in the left scapula and the bullet exited through his throat just below his collar bone. As he continued to run, the first bullet and another shot to his upper chest caused his lung to collapse such that he was unable to breathe. As a result, he eventually collapsed in the street. Andrews, who had chased him, stood over Sosely with the gun, and again asked for the rest of his money. Sosely told him that it was in his left pocket. Andrews then fired another shot into Sosely's left hip, which exited through his left buttocks. Andrews

---

[4]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Andrews*, 61 So.3d 121, 122-24 (La. App. 4th Cir. 2011); St. Rec. Vol. 4 of 5, 4th Cir. Opinion, 2010-KA-1020, pp. 1-4, 2/16/11.

2

reached into Sosely's pocket and took the remaining $600 to $800 of the insurance proceeds. Andrews then fled the scene. As a result of the shooting, Sosely had numerous surgeries and suffered permanent nerve injury causing paralysis and "RSD"[5] in his right arm.

Andrews was tried before a jury on March 17 and 18, 2010, and found guilty as charged of attempted first degree murder.[6] On May 14, 2010, the Trial Court sentenced Andrews to 50 years in prison without benefit of parole, probation, or suspension of sentence.[7] During the pendency of Andrews's direct appeal, the Trial Court was ordered to rule on Andrews's motion for post-verdict judgment of acquittal, which the Trial Court denied on October 22, 2010.[8]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Andrews's appointed counsel asserted that the Trial Court abused its discretion by denying the defense's cause challenge to a prospective juror.[9] Andrews filed a *pro se* supplemental brief asserting that the transcript was not sufficient for the appellate court to determine if he received a fair trial and his trial counsel refused to allow him to testify on his own behalf.[10]

---

[5]"RSD" or reflex sympathetic dystrophy syndrome is a disorder that causes lasting pain, usually in an arm or leg, which appears after an injury, stroke, or heart attack and the severity of pain is typically worse than the original injury itself. Doctors don't know exactly what causes it, but they are able to treat many cases. The condition is now referred to as Complex Regional Pain Syndrome. https://www.webmd.com/.

[6]St. Rec. Vol. 1 of 5, Trial Minutes, 3/17/10; Trial Minutes, 3/18/10; St. Rec. Vol. 4 of 5, Trial Transcript, 3/17-18/10; Jury Charge Transcript, 3/18/10; St. Rec. Vol. 3 of 5, Jury Verdict Form, 3/18/10.

[7]St. Rec. Vol. 1 of 5, Sentencing Minutes, 5/14/10; St. Rec. Vol. 4 of 5, Sentencing Transcript, 5/14/10. The record includes numerous references to a multiple bill and related hearings. The record, however, does not include a copy of the multiple bill or a minute entry or order related to any resentencing related to the multiple bill.

[8]St. Rec. Vol. 4 of 5, Trial Court Order, 10/22/10; 4th Cir. Order, 2010-KA-1020, 9/17/10; St. Rec. Vol. 3 of 5, Motion for Post-Verdict Judgment of Acquittal, 4/6/10.

[9]St. Rec. Vol. 4 of 5, Appeal Brief, 2010-KA-1020, dated 9/7/10.

[10]St. Rec. Vol. 4 of 5, Supplemental Appeal Brief, 2010-KA-1020, dated 11/29/10.

On February 16, 2011, the Louisiana Fourth Circuit affirmed the conviction, finding no merit in any of the claims.[11] The Court, however, remanded the matter for resentencing based on the Trial Court's failure to timely rule on the motion for post-verdict judgment of acquittal. The Trial Court complied and on April 21, 2011, resentenced Andrews to 50 years in prison without benefit of parole, probation, or suspension of sentence.[12]

On September 23, 2011, the Louisiana Supreme Court denied Andrews's writ application without stated reasons.[13] Andrews's conviction was final under federal law ninety (90) days later, on December 22, 2011, when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the U.S. Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On September 21, 2012, Andrews's, through new counsel, filed an application for post-conviction relief asserting the following grounds for relief:[14] (1) he was denied effective assistance of counsel when his counsel failed to file a motion to suppress the card seized from Andrews's mail; (2) he was denied effective assistance of counsel when his counsel failed to file a motion to reconsider the sentence; (3) he was denied effective assistance of counsel when appellate counsel failed to assert issues related to illegal search and seizure, excessive sentence, and sufficiency of the evidence or notify Andrews why these issues were not asserted.

---

[11]*Andrews*, 61 So.3d at 121; St. Rec. Vol. 4 of 5, 4th Cir. Opinion, 2010-KA-1020, 2/16/11.

[12]St. Rec. Vol. 1 of 5, Sentencing Minutes, 4/21/11.

[13]*State v. Andrews*, 69 So.3d 1156 (La. 2011); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2011-KO-0458, 9/23/11; La. S. Ct. Writ Application, 11-KO-0458, 3/4/11; St. Rec. Vol. 4 of 5, La. S. Ct. Letter, 2011-KO-458, 3/4/11.

[14]St. Rec. Vol. 3 of 5, Application for Post-Conviction Relief, 9/21/12.

4

After receiving additional briefing, the Trial Court found the claim of ineffective assistance of counsel at sentencing to be barred from post-conviction review, citing La. Code Crim. P. art. 930.3, *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996), and *State v. Thomas*, 19 So.3d 466 (La. 2009).[15]

The Court later held evidentiary hearings on November 8, 2013, and August 22, 2014, on the remaining two issues and received additional briefing.[16] On November 19, 2015, the Trial Court denied relief finding the remaining claims to be meritless under *Strickland v. Washington*, 466 U.S. 668 (1984).[17]

On April 12, 2016, the Louisiana Fourth Circuit denied Andrews's counsel-filed writ application without stated reasons.[18] The Louisiana Supreme Court also denied his subsequent counsel-filed writ application on October 27, 2017, pursuant to *Strickland*.[19]

## II.    Federal Petition

On December 5, 2017, Andrews through counsel filed this federal petition for habeas corpus relief in which he asserts that he was denied effective assistance of counsel when his trial counsel failed to file a motion to suppress the mail seized without a warrant or consent.[20] The

---

[15] St. Rec. Vol. 3 of 5, Trial Court Ruling, 3/19/13; State's Objections, 2/28/13; St. Rec. Vol. 1 of 5, Minute Entry, 3/19/13.

[16] St. Rec. Vol. 1 of 5, Minute Entry, 11/8/13; Minute Entry, 8/22/14; St. Rec. Vol. 2 of 5, State's Opposition, 9/19/14; Hearing Transcript, 11/8/13; Hearing Transcript, 8/22/14.

[17] St. Rec. Vol. 2 of 5, Trial Court Ruling, 11/19/15; St. Rec. Vol. 1 of 5, Minute Entry, 11/19/15.

[18] St. Rec. Vol. 5 of 5, 4th Cir. Order, 2016-K-0055, 4/12/16; 4th Cir. Writ Application, 2016-K-0055, 1/14/16.

[19] *State v. Andrews*, 228 So.3d 201 (La. 2017); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2016-KP-0876, 10/27/16; La. S. Ct. Writ Application, 16-KP-876, 5/10/16.

[20] Rec. Doc. No. 1, p. 6.

5

State filed a response in opposition to Andrews's federal petition conceding timeliness and asserting that the claim is without merit.[21]

### III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[22] applies to this petition, which was filed by Andrews's counsel on December 5, 2017. The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In its opposition response, the State concedes timeliness and outlines the efforts Andrews made to exhaust state court review of his claim. The record does not reflect that Andrews's claim is in procedural default. The Court will proceed to substantive review of his claim.

### IV. Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

---

[21]Rec. Doc. No. 12.

[22]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to, or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. 415, __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*,

7

210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V. **Effective Assistance of Counsel**

In the sole claim before this federal habeas court, Andrews asserts that he received ineffective assistance of counsel during trial. His habeas counsel argues simply this:[23]

> A motion to supress [sic] evidence was never filed by trial counsel. Trial counsel failed to preserve a significant issue by not objecting to evidence being produced. In this case, a New Orleans police officer conducted a search, without consent or a warrant, of occupied non-abandoned property, where the defendant resided, of a residence in Jefferson Parish (which was outside of the Orleans parish officer's jurisdiction, and seized U.S. Mail, which is a crime on its own. This is ineffective assistance as the police officer had no legal right to enter the property, and had trial counsel been effective this issue would have been litigated and led to a different outcome.

These arguments were asserted by Andrews's state post-conviction counsel before the Trial Court. The Trial Court denied relief finding that Andrews failed to establish any reason for his counsel to have moved to suppress the mail receipt seized by police from his girlfriend's former residence. After the evidentiary hearings, the Trial Court held that, when police arrived at the address obtained through information provided by the victim, the residence appeared abandoned and the electricity was disconnected. The landlord confirmed to police that the tenant, Andrews's girlfriend, had previously moved out. The Court held that Andrews had no right of privacy at his girlfriend's former residence, especially considering that neither the girlfriend nor Andrews lived at the residence when the police seized the mail receipt. The Court also noted that the mail receipt was found in plain view and there were no grounds shown for its suppression. In denying relief under *Strickland*, the Trial Court further held that Andrews failed to prove that his counsel acted deficiently or that the outcome of the trial would have been different had counsel filed a motion to

---

[23] Rec. Doc. No. 1, p. 6.

suppress.  Following this, the Louisiana Supreme Court also found that Andrews failed to meet his burden of proof under *Strickland*.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 687.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was

10

unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing

professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

The state court record reflects that a potential for a motion to suppress the evidence was in fact entertained by the state trial court on July 9, 2009, well before Andrews's trial.[24] At the hearing, the investigating officer testified that after Sosely was released from the hospital, he showed them the house where he met Andrews.[25] The house appeared to be abandoned. The officers learned from the landlord that the tenants had recently moved out, and the electricity was turned off.[26] The lessee had been the same person, Geralyn McGee, who owned the cell phone

---

[24] St. Rec. Vol. 4 of 5, Hearing Transcript, p. 20, 7/9/09.

[25] St. Rec. Vol. 4 of 5, Hearing Transcript, p. 7, 7/9/09.

[26] St. Rec. Vol. 4 of 5, Hearing Transcript, pp. 8, 9, 7/9/09.

number used by Sosely to reach Andrews.[27]  The officers also saw a mail delivery notice from the postal service stuck to the door and addressed to Charles Andrews.[28]  The officers did not seize the mail delivery notice right away, but did so at a later time while the residence was still unoccupied.

At this same motion hearing, Andrews's counsel had ample opportunity to and did question the officer about the house and the mail delivery notice that was retrieved.[29]  Counsel also cross-examined the officer about how he obtained the address of the residence and the identity of the person who owned the cell phone number used to link the house to Andrews.  At the conclusion of the hearing, the Trial Court held that no motion to suppress evidence would lie.[30]

Similar testimony was given by the officer during trial.[31]  On post-conviction review, Andrews challenged his trial counsel's performance for not filing a motion to suppress, which the record shows the Trial Court had already determined had no foundation.  At the post-conviction evidentiary hearing, Andrews's pretrial counsel (who withdrew before trial) was questioned about the pretrial hearing and about his questions during that hearing to the detective with specific focus on the abandoned residence and the mail delivery notice.[32]  Ultimately Andrews's pretrial counsel testified that his main focus at the time was on the suppression of the identification made by the

---

[27]St. Rec. Vol. 4 of 5, Hearing Transcript, pp. 7, 9, 7/9/09.

[28]St. Rec. Vol. 4 of 5, Hearing Transcript, pp. 8, 20, 7/9/09.

[29]St. Rec. Vol. 4 of 5, Hearing Transcript, pp. 20-21, 7/9/09.

[30]St. Rec. Vol. 4 of 5, Hearing Transcript, p. 37, 7/9/09.

[31]St. Rec. Vol. 4 of 5, Trial Transcript, p. 50-52, 3/17-18/10.

[32]St. Rec. Vol. 2 of 5, Hearing Transcript, 11/8/13.

victim, which was done before the mail notice was seized. Counsel recalled having overall concerns with the investigation and development of Andrews as a suspect, but nothing in particular with the mail notice. He also conceded that the record showed that the detective did speak with the owner of the property and that Andrews and his girlfriend no longer lived in the residence when the detective was on the property. During the second part of the evidentiary hearing, Andrews's trial counsel testified that he enrolled in the case after pretrial motions had concluded and did not file any further pretrial motions.[33]

The Trial Court held extensive evidentiary hearings to determine the justification for counsel's actions and the need *vel non* for any of Andrews's counsel to have filed a motion to suppress the mail delivery notice seized from the empty, former residence of Andrews's girlfriend. The Trial Court issued detailed reasons finding that Andrews failed to establish that he had any privacy rights at the abandoned residence or in the mail delivery notice stuck in the door of the abandoned residence. As a result, the Court resolved that Andrews's counsel had no grounds to challenge the taking of that notice in a motion to suppress.

The evidence at the pretrial hearing, trial, and the post-conviction hearings established no one was living at the residence when the investigation was done into the shooting. Andrews's girlfriend, the only named tenant on the lease, had moved out and the electricity was turned off long before the officer was ever on the property. Contrary to the misrepresentations by Andrews's state post-conviction counsel, the mail delivery notice was not in the mailbox, but instead was stuck into the doorframe of the residence in some way. The evidence also established that the item

---

[33]St. Rec. Vol. 2 of 5, Hearing Transcript, 8/22/14.

was not itself "mail" but a notice that the U.S. Postal Service had attempted to deliver mail to Andrews which had to be retrieved at the post office.

More importantly, Andrews has failed to demonstrate that the state courts' decision was contrary to or an unreasonable application of *Strickland*. Applying the *Strickland* standards, the record demonstrates that Andrews's prior counsel made a strategic decision to push forward on the motion to suppress the identification and, after hearing the testimony of the officer at the pretrial hearing, made a sound, strategic choice to argue the motion to suppress the identification and not to pursue a motion to suppress the mail delivery notice. While in retrospect, Andrews's prior counsel may have thought he should have filed more motions, *Strickland* does not rely on a hindsight revisiting of a decision. Andrews's counsel could point to nothing concrete on which to have based a suppression motion, and in fact conceded that the pretrial testimony by the detective revealed nothing that would have called for suppression of the mail delivery notice taken from the empty residence.

As determined by the state courts, the record discloses no basis for Andrews's counsel to have filed a motion to suppress in this case. Counsel is not ineffective for failing to urge a meritless motion. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections."). Andrews has failed to establish that the state courts' denial of relief on this issue was contrary to or an unreasonable application of *Strickland*. He is not entitled to relief on this issue.

**VI.    Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Andrews's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[34]

New Orleans, Louisiana, this  26  day of July, 2018.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[34] *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.